**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **VISTA PEAK VENTURES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **HANNSTAR DISPLAY CORPORATION,** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Vista Peak Ventures, LLC ("VPV") files this Complaint against Defendant Hannstar Display Corporation ("Defendant" or "Hannstar") for infringement of U.S. Patent No. 5,929,947 ("the '947 patent"), U.S. Patent No. 7,088,401 ("the '401 patent"), U.S. Patent No. 6,579,749 ("the '749 patent"), U.S. Patent No. 6,674,093 ("the '093 patent"), U.S. Patent No. 6,891,196 ("the '196 patent"), and U.S. Patent No. 7,499,119 ("the '119 patent"), collectively, the "Asserted Patents."

## THE PARTIES AND RELATED BACKGROUND

1.      Vista Peak Ventures, LLC is a Texas limited liability company, located at 1400 Preston Rd, Suite 472, Plano, TX 75093.

2.      Upon information and belief, Defendant Hannstar Display Corporation ("Defendant" or "Hannstar") is a multinational corporation organized under the laws of Taiwan, with its principal place of business located at 26th floor., No.1, Songzhi Road, Xinyi District, Taipei 110, Taiwan , R.O.C.

3.      Upon information and belief, Hannstar commenced operations in June 1998. Hannstar and its subsidiaries are "primarily engaged in the manufacturing and sale of thin film

transistor liquid crystal display ("TFT-LCD") panels, flat-panel displays, CCTV and related components." *See Consolidated Financial Statements*, HANNSTAR DISPLAY CORP. (December 31, 2019 and 2018), at p. 15, https://www.hannstar.com/HannstarUserFile/files/Quarterly/en/2019_Q4_e_con.pdf. Hannstar was listed on the Taiwan Stock Exchange in September 2004. *See id.*

4.      Upon information and belief, Hannstar maintains a corporate presence in the U.S. via its U.S.-based subsidiaries Hannspree North America Inc. ("Hannspree NA") and Hannstar USA Inc. ("Hannstar USA"), which are each organized under the laws of Delaware. Hannspree NA has its principal place of business located at 4401 Eucalyptus Ave. Suite #110, Chino, CA 91710, and may be served via its registered agent: Cogency Global Inc., 850 New Burton Road Suite 201, Dover, DE, 19904. Hannstar USA may be served via its registered agent: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

5.      Upon information and belief, Hannstar with its subsidiaries Hannspree NA and Hannstar USA, as part of global network of overseas sales and manufacturing subsidiaries, have operated as agents of one another and vicariously as two arms of the same business group to work in concert together and enter into agreements that are nearer than arm's length. Hannstar, via at least its subsidiaries Hannspree NA and Hannstar USA's activities, conducts business in the United States, including in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state...."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F.Supp.2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of

the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

6.      Upon information and belief, Hannstar's TFT-LCD panels are incorporated into consumer electronic devices, including GPS devices and bridge terminals manufactured by TomTom International BV (referred to as "TomTom") and satellite radios manufactured by Sirius XM Radio Inc. (referred to as "SiriusXM").

7.      Through offers to sell, distribution, sales, imports, and agreements to transfer ownership of its TFT-LCD panels with customers operating in the U.S. such as TomTom and SiriusXM and/or its U.S. subsidiaries, Hannstar USA and Hannspree NA, Hannstar does business in the U.S., the state of Texas and in the Eastern District of Texas.

<u>**JURISDICTION AND VENUE**</u>

8.      This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     Upon information and belief, Hannstar is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this judicial district, including: (A) at least part of its infringing activities alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in this state and this judicial district and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this judicial district, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this judicial district vicariously through and/or in concert with its

alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

11.     This Court has personal jurisdiction over Hannstar, directly and/or through intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.- based, wholly-owned subsidiaries Hannstar USA and Hannspree NA. Through direction and control of these subsidiaries, Hannstar has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Hannstar would not offend traditional notions of fair play and substantial justice. For example, Hannstar confirms, via its website, that Hannspree NA is the company's partner in North America. *See About Hannstar Partners*, HANNSTAR, https://www.hannstar.com/Common.aspx?mid=96&tmid=1&modid=1.

12.     Upon information and belief, Hannstar controls or otherwise directs and authorizes all activities of its subsidiaries and intermediaries, including, but not limited to Hannstar USA and Hannspree NA. Via at least these subsidiaries and intermediaries, Hannstar has placed and continues to place infringing TFT-LCD panels into the U.S. stream of commerce via established distribution channels, by distributing, marketing, offering for sale, selling, servicing, TomTom and SiriusXM-branded products.

13.     Upon information and belief, Defendant Hannstar has placed and continues to place into the stream of commerce using established distribution channels infringing products with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. For example, Hannstar utilizes subsidiaries such as Hannstar USA and Hannspree NA to import and distribute TomTom

and SiriusXM branded products and offer to sell and sell these products through a variety of online and brick and mortar retail stores. *See TomTom Rider*, TOMTOM, https://www.tomtom.com/en_us/drive/motorcycle/#productLineup; *see also Our Featured Radios*, SIRIUSXM, https://shop.siriusxm.com/radios/. Hannstar USA and Hannspree NA, on behalf of and for the mutual benefit of Hannstar, imported, distributed offered for sale, advertised, and sold Hannstar products including Hannstar A4HSN55003093 (incorporated into the TomTom Rider 400), Hannstar HSD070IFW1 (incorporated into the TomTom Bridge), and Hannstar ET0240C3DM6 (incorporated into SiriusXM Onyx Plus SXPL2). Such Hannstar products have been sold in retail stores, both brick and mortar and online, within this judicial district and in Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

14.     Hannstar also utilizes "selling agents" to provide its products to end customers. *See Consolidated Financial Statements*, HANNSTAR DISPLAY CORP. (December 31, 2019 and 2018), at p. 74, https://www.hannstar.com/HannstarUserFile/files/Quarterly/en/2019_Q4_e_con.pdf (identifying its major customers as "A" and "B"). Upon information and belief, Hannstar's major customers, accounting for about a 50% share in sales revenue in 2019, are "selling agents" and not end customers. *Id.* These selling agents "reduce the risk of collection of accounts and provide better customer services" for the benefit of Hannstar. *Id.* Hannstar, therefore, utilizes these selling agents to place and continue to place into the stream of commerce using established distribution

channels infringing products with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas.

15.    Upon information and belief, Hannstar controls alter egos, intermediaries, joint venture parties, agents, distributors, importers, customers, subsidiaries, and/or consumers, including, but not limited to Hannstar USA and Hannspree NA. Hannstar controls or otherwise directs and authorizes all activities of Hannstar USA and Hannspree NA in relation to the Hannstar products, including using, offering for sale, selling, and/or importing infringing Hannstar products, the products' components, and/or products containing same that incorporate the fundamental technologies covered by the Asserted Patents. Thus, Hannstar USA and Hannspree NA give Hannstar substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state of Texas.

16.    In the alternative, the Court has personal jurisdiction over Hannstar under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Hannstar is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Hannstar is consistent with the U.S. Constitution.

17.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Hannstar is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

18.     Upon information and belief, Hannstar has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

### THE ASSERTED PATENTS AND TECHNOLOGY

19.     Upon information and belief, a significant portion of operating revenue of Defendant is derived from the manufacture and sale of TFT-LCD flat panel displays, which are imported into the United States, distributed, and ultimately sold to U.S. consumers. For example, Hannstar "acquired [] state-of-the-art TFT-LCD manufacturing technology with the highest efficiency for mass production." *See Company Profile*, HANNSTAR, https://www.hannstar.com/Common.aspx?mid=28&tmid=1&modid=1. Hannstar reported over 16 billion NT$ (about 544 million US$) in sales revenue in 2019 of which 99% came from the "production and sale of TFT-LCD panels, flat-panel displays and CCTV.*" See Consolidated Financial Statements*, HANNSTAR DISPLAY CORP. (December 31, 2019 and 2018), at pp. 73-74, https://www.hannstar.com/HannstarUserFile/files/Quarterly/en/2019_Q4_e_con.pdf.  Hannstar's "customers include leading electronics companies both in Taiwan and overseas." *Id*. Defendant's subsidiaries, selling agents, customers and distributors having a significant U.S. business presence, such as its U.S.-based subsidiaries Hannstar USA and Hannspree NA and customers TomTom and SiriusXM, receive Hannstar products incorporated into electronic devices and distribute and sell those products to consumers in the U.S.

20.   The Asserted Patents cover TFT-LCD panels, their components, including infringing TFT-LCD panels made by Defendant and incorporated into TomTom and SiriusXM-branded products, and processes related to the same (referred to as the "Accused Panels") for importation, distribution, and sale in the U.S. Examples of Defendant's Accused Panels are Hannstar A4HSN55003093 (incorporated into the TomTom Rider 400), Hannstar HSD070IFW1 (incorporated into the TomTom Bridge), and Hannstar ET0240C3DM6 (incorporated into SiriusXM Onyx Plus SXPL2). The labels for model no. Hannstar A4HSN55003093 and the TomTom Rider 400 product are shown below:







21.   Typically, a TFT-LCD has the following structure shown below for the Hannstar LCD Model No. A4HSN55003093, comprising of a backlight, a TFT/circuitry layer, a liquid crystal layer, and a color filter:



22.    As shown above, the TFT-LCD panel contains a TFT array substrate and many TFTs. A teardown image below from the Hannstar LCD Model No. A4HSN55003093 shows a sampling of TFTs.



23.     The Accused Panel has circuitry lines accompanying the TFTs, with larger rectangular areas associated with the pixels. As shown below, the plurality of drain lines is arranged perpendicularly to the plurality of gate bus lines. A pixel electrode is arranged in a region surrounded by the gate and drain bus lines and made of transparent conductive film.



24.    Each TFT is arranged near an intersection of gate and drain bus lines.



25.    Each TFT acts as a switch that operates its respective individual pixel using the circuity lines. In that way, the pixels can be turned on and off to create an image on an LCD by allowing or preventing light to pass through. The individual pixels are more apparent when a color

filter layer overlays the circuits as shown in the image below for the Hannstar LCD Model No. A4HSN55003093.



26.     As shown below, each TFT in the array comprises a 1) gate electrode formed on a transparent insulating substrate and electrically connected to the gate bus line, 2) a drain electrode, 3) a channel layer, and 4) a contact layer, and is electrically connected to the drain bus line.



27.    The plurality of drain lines are arranged perpendicularly to the gate bus lines and electrically isolated via a first insulating film.



28.    In the Accused Panel shown below, a source electrode is connected to a pixel electrode.



29.    As shown below, a source electrode is electrically isolated from the drain electrode and bus lines by a second insulating film.



30.    The Accused Panel includes an interconnection redundant film located in a contact hole formed in second insulating film is electrically connected to the drain bus line via source wiring.



31.    As shown below, the active matrix substrate of Hannstar LCD Model No. A4HSN55003093 has a lateral electrical field type active matrix substrate comprised of thin-film transistors (TFTs), pixel electrodes, and common electrodes.



32.    The active matrix substrate of the Accused Panel has a gate electrode layer, a gate insulating layer, and an amorphous silicon (a-Si) layer stacked on a transparent insulating substrate.



33.    As shown below, the layered structure of the active matrix substrate includes a gate electrode, a gate wiring, a comb-shaped common electrode, and a TFT area.



34.    Drain wiring is present and formed on a passivation film shown below, which covers the layered structure.



35.    A second passivation film is present and overlays the drain wire and first passivation film.



36.    As shown below, openings are present that pass through the passivation films.



37.    The openings that pass through the passivation films reach the amorphous silicon semiconductor layer.



38.     An opening is present in the second passivation film with a wiring layer formed of ITO extending through it that connects with the drain wiring.



39.     As shown below, the wiring layer extends through the opening and openings for connection.



Path from Opening to Drain Wiring (the Source and Drain Electrodes are connected via the semiconductor)

40.    The Accused Panels such as Hannstar LCD Model No. A4HSN55003093 also comprise a first electrode on a substrate that forms one of two electrodes of an accumulation capacitor. A first insulating film covers the first electrode.



41.    As shown below, each TFT has a second electrode with conductive films (e.g., Al and Mo) that completes the accumulation capacitor with the first electrode.



42.    The LCD has a protective insulating layer which has a contact hole in a layer above the first and second electrodes with the second conductive film (e.g., Mo) at the bottom.



43.    The LCD, as shown below, has a TFT with source and drain electrodes comprising the second conductive film (e.g., Mo) formed on the insulating film.





Source Electrode
Second Conductive Film (Mo)
Drain Electrode
Insulating Film

44.    The Accused Panels, such as Hannstar LCD Model No. A4HSN55003093, further comprise an LCD device, as shown below, having a patterned Al or Al alloy interconnection line disposed on an insulating plate by way of an insulating layer.



First Interconnection Line
Insulating Plate

45.    As shown below, the LCD has an insulating layer that covers the interconnection line and a contact hole that exposes part of the interconnection line.



46.    A first conductive material made of molybdenum is in contact with the exposed part of the interconnection line and covers the whole exposed part, as shown below.



47.    The LCD device shown below also has a transparent conductive layer (e.g., ITO) in contact with the first conductive material and thereby electrically connected to the first interconnection line.



48.     The Asserted Patents also cover Defendant's processes for making TFT-LCD panels. Below is a schematic cross-sectional view of a TFT from Hannstar LCD Model No. A4HSN55003093. The images show an amorphous silicon film formed on a substrate with an n-type region in the top surface of the amorphous silicon film.



49.     As shown below, a metal film is formed on the amorphous silicon film to form an n-type amorphous silicon film.



50.     Aluminum source and drain electrodes are formed on the amorphous silicon with the n-type amorphous silicon film there between, as shown below.



## <u>COUNT I</u>

### (INFRINGEMENT OF U.S. PATENT NO. 5,929,947)

51.     Plaintiff incorporates paragraphs 1 through 50 herein by reference.

52.     VPV is the assignee of the '947 patent, entitled "Liquid crystal display thin film transistor array with redundant film formed over a contact hole and method of fabricating the same," with ownership of all substantial rights in the '947 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

53.     The '947 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '947 patent issued from U.S. Patent Application No. 09/168,085.

54.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement) one or more  claims of the '947 patent in this judicial district and elsewhere in Texas and the United States.

55.     Upon information and belief, Defendant designs, manufactures, imports, distributes, offers to sell, and sells the Accused Panels, including via Defendant's subsidiaries, partners, and customers. These panels are incorporated into electronic devices such as GPS devices, bridges, and satellite radios, including such devices distributed and sold in the U.S. under at least the TomTom and SiriusXM brands.

56.     Defendant directly infringes the '947 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '947 patent to, for example, alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendant sells and makes Accused Panels outside of the United States, delivers those products to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendant delivers the Accused Panels outside of the United States, Defendant does so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '947 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendant directly infringes the '947 patent through its direct involvement in the activities of Defendant's subsidiaries, partners, and customers on behalf of and for the benefit of Defendant. Such direct infringement includes selling and offering for sale the Accused Panels directly to its U.S. customers, such as TomTom and SiriusXM and importing the Accused Panels into the United States for its customers. Upon information and belief, Defendant's U.S. based subsidiaries conduct activities that constitute direct infringement of the '947 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused

Panels. Defendant is vicariously liable for this infringing conduct of Defendant's U.S. based subsidiaries and its selling agents (under both the alter ego and agency theories) because, as an example and, upon information and belief, Defendant and its U.S. based subsidiaries and selling agents operate as agents of one another and vicariously as arms of the same business group to work in concert together, including as business partners or in a joint venture, entering into agreements that are nearer than arm's length to conduct business in the United States. Defendant further receives a direct financial benefit from its U.S. based subsidiaries' infringement.

57.    For example, Defendant infringes claim 1 of the '947 patent via the Accused Panels such as Hannstar A4HSN55003093 (incorporated into the TomTom Rider 400), Hannstar HSD070IFW1 (incorporated into the TomTom Bridge), and Hannstar ET0240C3DM6 (incorporated into SiriusXM Onyx Plus SXPL2). Those Accused Panels include "[a] liquid crystal display thin film transistor array comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include a plurality of parallel gate bus lines arranged on a transparent insulating substrate; a plurality of drain bus lines arranged perpendicularly to said gate bus lines and electrically isolated from said gate bus lines by a first insulating film; a thin film transistor arranged near an intersection of said gate bus line and said drain bus line; and a pixel electrode arranged in a region surrounded by said gate bus lines and said drain bus lines and made of a transparent conductive film, said thin film transistor comprising a gate electrode formed on said transparent insulating substrate and electrically connected to said gate bus line, a drain electrode formed via said first insulating film, a channel layer, and a contact layer and electrically connected to said drain bus line, and a source electrode formed via said first insulating film, said channel layer, and said contact layer and electrically connected to said pixel

electrode, and said pixel electrode being electrically isolated from said drain electrode and said drain bus line by a second insulating film, wherein a contact hole which is to be electrically connected to said drain bus line is formed in said second insulating film stacked on said drain bus line in a region including the intersection of said gate bus line and said drain bus line, and an interconnection redundant film made of the same transparent conductive film as said pixel electrode is formed on said second insulating film so as to cover said contact hole.

58.     Defendant further infringes the '947 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '947 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

59.     At a minimum, Defendant has known of the '947 patent at least as early as the filing date of the complaint. In addition, Defendant has known of the '947 patent since December 17, 2019 when Defendant was provided access to a data room containing claim charts, including for the '947 patent.

60.     Upon information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '947 patent to directly infringe one or more claims of the '947 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the

fact, that the induced acts constitute infringement of the '947 patent. Upon information and belief, Defendant intends to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, TomTom GPS products that incorporate Hannstar TFT-LCD panels are designed for and sold to consumers in the United States. *See TomTom Rider 400*, TOMTOM, https://www.tomtom.com/en_us/drive/motorcycle/products/rider-400/ (indicating that the "Map Coverage" for the device includes the "United States").

61.    Upon information and belief, despite having knowledge of the '947 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '947 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '947 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

62.    VPV has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to VPV in an amount that adequately compensates VPV

for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together

with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 7,088,401)

63.    Plaintiff incorporates paragraphs 1 through 62 herein by reference.

64.    VPV is the assignee of the '401 patent, entitled "Liquid crystal display device with

less pixel error and method of manufacturing the same," with ownership of all substantial rights

in the '401 patent, including the right to exclude others and to enforce, sue, and recover damages

for past and future infringements.

65.    The '401 patent is valid, enforceable, and was duly issued in full compliance with

Title 35 of the United States Code. The '401 patent issued from U.S. Patent Application No.

09/609,169.

66.    Defendant has and continues to directly and/or indirectly infringe (by inducing

infringement) one or more claims of the '401 patent in this judicial district and elsewhere in Texas

and the United States.

67.    Upon information and belief, Defendant designs, manufactures, imports,

distributes, offers to sell, and sells the Accused Panels, including via Defendant's subsidiaries,

partners, and customers. These panels are incorporated into electronic devices such as GPS

devices, bridges, and satellite radios, including such devices distributed and sold in the U.S. under

at least the TomTom and SiriusXM brands.

68.    Defendant directly infringes the '401 patent via 35 U.S.C. § 271(a) by making,

offering for sale, selling, and/or importing Accused Panels, their components, and/or products

containing same that incorporate the fundamental technologies covered by the '401 patent to, for

example, alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or

consumers. Furthermore, upon information and belief, Defendant sells and makes Accused Panels outside of the United States, delivers those products to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendant delivers the Accused Panels outside of the United States, Defendant does so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '401 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendant directly infringes the '401 patent through its direct involvement in the activities of Defendant's subsidiaries, partners, and customers on behalf of and for the benefit of Defendant. Such direct infringement includes selling and offering for sale the Accused Panels directly to its U.S. customers, such as TomTom and SiriusXM and importing the Accused Panels into the United States for its customers. Upon information and belief, Defendant's U.S. based subsidiaries conduct activities that constitute direct infringement of the '401 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendant is vicariously liable for this infringing conduct of Defendant's U.S. based subsidiaries and its selling agents (under both the alter ego and agency theories) because, as an example and, upon information and belief, Defendant and its U.S. based subsidiaries and selling agents operate as agents of one another and vicariously as arms of the same business group to work in concert together, including as business partners or in a joint venture, entering into agreements that are nearer than arm's length to conduct business in the United States. Defendant further receives a direct financial benefit from its U.S. based subsidiaries' infringement.

69.    For example, Defendant infringes claim 1 of the '401 patent via the Accused Panels such as Hannstar A4HSN55003093 (incorporated into the TomTom Rider 400), Hannstar

HSD070IFW1 (incorporated into the TomTom Bridge), and Hannstar ET0240C3DM6 (incorporated into SiriusXM Onyx Plus SXPL2). Those Accused Panels include a "liquid crystal display device, comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels each include a first electrode formed on a substrate as one of two electrodes of an accumulation capacitor, said first electrode comprising a portion of a gate bus line pattern of said liquid crystal display device; an insulating film formed on said first electrode to cover said first electrode; a second electrode formed on said first electrode via said insulating film as the other electrode of said accumulation capacitor and including a first conductive film and a second conductive film formed on said first conductive film; a protective insulating layer formed on said second electrode and having a contact hole which is formed over said first and second electrodes, a bottom of said contact hole being defined by said second conductive film; and a thin film transistor comprising source and drain electrodes which are formed on said insulating film and comprise said second conductive film, wherein one of said first conductive film and said second conductive film comprises a layer formed of a material selected from the group consisting of Al (Aluminum), W (Tungsten), Cu (Copper), Ta (Tantalum) and TaN (Tantalum Nitride).

70.    Defendant further infringes the '401 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '401 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

71.     At a minimum, Defendant has known of the '401 patent at least as early as the filing date of the complaint. In addition, Defendant has known of the '401 patent since December 17, 2019 when Defendant was provided access to a data room containing claim charts, including for the '401 patent.

72.     Upon information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '401 patent to directly infringe one or more claims of the '401 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '401 patent. Upon information and belief, Defendant intends to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, TomTom GPS products that incorporate Hannstar TFT-LCD panels are designed for and sold to consumers in the United States. *See TomTom Rider 400*, TOMTOM,

https://www.tomtom.com/en_us/drive/motorcycle/products/rider-400/ (indicating that the "Map Coverage" for the device includes the "United States").

73.    Upon information and belief, despite having knowledge of the '401 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '401 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '401 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

74.    VPV has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to VPV in an amount that adequately compensates VPV for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 6,579,749)

75.    Plaintiff incorporates paragraphs 1 through 74 herein by reference.

76.    VPV is the assignee of the '749 patent, entitled "Fabrication method and fabrication apparatus for thin film transistor," with ownership of all substantial rights in the '749 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

77.    The '749 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '749 patent issued from U.S. Patent Application No. 09/440,615.

78.    Defendant has and continues to  directly  and/or indirectly infringe (by inducing infringement) one or more  claims of the '749 patent in this judicial district and elsewhere in Texas and the United States.

79.    Upon information and belief, Defendant designs, manufactures, imports, distributes, offers to sell, and sells the Accused Panels, including via Defendant's subsidiaries, partners, and customers. These panels are incorporated into electronic devices such as GPS devices, bridges, and satellite radios, including such devices distributed and sold in the U.S. under at least the TomTom and SiriusXM brands.

80.    Defendant directly infringes the '749 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '749 patent to, for example, alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendant sells and makes Accused Panels outside of the United States, delivers those products to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendant delivers the Accused Panels outside of the United States, Defendant does so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '749 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendant directly infringes the '749 patent through its direct involvement in the activities of Defendant's subsidiaries, partners, and customers on behalf of and for the benefit of Defendant. Such direct infringement includes selling and offering for sale the Accused Panels directly to its U.S. customers, such as TomTom and SiriusXM and importing the

Accused Panels into the United States for its customers. Upon information and belief, Defendant's U.S. based subsidiaries conduct activities that constitute direct infringement of the '749 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendant is vicariously liable for this infringing conduct of Defendant's U.S. based subsidiaries and its selling agents (under both the alter ego and agency theories) because, as an example and, upon information and belief, Defendant and its U.S. based subsidiaries and selling agents operate as agents of one another and vicariously as arms of the same business group to work in concert together, including as business partners or in a joint venture, entering into agreements that are nearer than arm's length to conduct business in the United States. Defendant further receives a direct financial benefit from its U.S. based subsidiaries' infringement.

81.    For example, Defendant infringes claim 13 of the '749 patent via the Accused Panels such as Hannstar A4HSN55003093 (incorporated into the TomTom Rider 400), Hannstar HSD070IFW1 (incorporated into the TomTom Bridge), and Hannstar ET0240C3DM6 (incorporated into SiriusXM Onyx Plus SXPL2). Those Accused Panels are made pursuant to a "method for fabricating a semiconductor device, comprising the steps of" each of the limitations of claim 13. The technology discussion above and the example accused TFT-LCD panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include semiconductor devices made pursuant to a first step of forming an amorphous silicon film on a substrate; and a second step of performing plasma processing with respect to said substrate having said amorphous silicon film formed thereon, said plasma containing an n-type impurity element selected from a group V of a periodic table to provide an n-type region in the top surface of the amorphous silicon film; and then directly a third step of forming a metal film on said amorphous silicon film to form an n-type amorphous silicon film therebetween.

82.     Defendant further infringes the '749 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '749 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

83.     At a minimum, Defendant has known of the '749 patent at least as early as the filing date of the complaint. In addition, Defendant has known of the '749 patent since December 17, 2019 when Defendant was provided access to a data room containing claim charts, including for the '749 patent.

84.     Upon information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '749 patent to directly infringe one or more claims of the '749 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '749 patent. Upon information and belief, Defendant intends to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations,

distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, TomTom GPS products that incorporate Hannstar TFT-LCD panels are designed for and sold to consumers in the United States. *See* *TomTom* *Rider* *400*, TomTom, https://www.tomtom.com/en_us/drive/motorcycle/products/rider-400/ (indicating that the "Map Coverage" for the device includes the "United States").

85.    Upon information and belief, despite having knowledge of the '749 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '749 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '749 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

86.    VPV has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to VPV in an amount that adequately compensates VPV for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 6,674,093)

87.    Plaintiff incorporates paragraphs 1 through 86 herein by reference.

88.    VPV is the assignee of the '093 patent, entitled "Active matrix substrate and manufacturing method therefor," with ownership of all substantial rights in the '093 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

89.    The '093 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '093 patent issued from U.S. Patent Application No. 09/695,321.

90.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '093 patent in this judicial district and elsewhere in Texas and the United States.

91.    Upon information and belief, Defendant designs, manufactures, imports, distributes, offers to sell, and sells the Accused Panels, including via Defendant's subsidiaries, partners, and customers. These panels are incorporated into electronic devices such as GPS devices, bridges, and satellite radios, including such devices distributed and sold in the U.S. under at least the TomTom and SiriusXM brands.

92.    Defendant directly infringes the '093 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '093 patent to, for example, alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendant sells and makes Accused Panels outside of the United States, delivers those products to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendant delivers the Accused Panels outside of the United States, Defendant does so

intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '093 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendant directly infringes the '093 patent through its direct involvement in the activities of Defendant's subsidiaries, partners, and customers on behalf of and for the benefit of Defendant. Such direct infringement includes selling and offering for sale the Accused Panels directly to its U.S. customers, such as TomTom and SiriusXM and importing the Accused Panels into the United States for its customers. Upon information and belief, Defendant's U.S. based subsidiaries conduct activities that constitute direct infringement of the '093 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendant is vicariously liable for this infringing conduct of Defendant's U.S. based subsidiaries and its selling agents (under both the alter ego and agency theories) because, as an example and, upon information and belief, Defendant and its U.S. based subsidiaries and selling agents operate as agents of one another and vicariously as arms of the same business group to work in concert together, including as business partners or in a joint venture, entering into agreements that are nearer than arm's length to conduct business in the United States. Defendant further receives a direct financial benefit from its U.S. based subsidiaries' infringement.

93.    For example, Defendant infringes claim 1 of the '093 patent via the Accused Panels such as Hannstar A4HSN55003093 (incorporated into the TomTom Rider 400), Hannstar HSD070IFW1 (incorporated into the TomTom Bridge), and Hannstar ET0240C3DM6 (incorporated into SiriusXM Onyx Plus SXPL2). Those Accused Panels includes an "active matrix substrate comprising" each of the limitations of claim 1. The technology discussion above and the Accused Panels provide context for Plaintiff's allegations that each of those limitations are met.

For example, the Accused Panels include (a) a gate electrode layer, a gate insulating layer and an amorphous silicon semiconductor layer deposited in a substantially stacked fashion on a transparent insulating substrate, viewed from a direction normal to said transparent insulating substrate, to form a layered structure including a gate electrode, a gate wiring and a thin-film transistor area; (b) a drain wiring formed on a first passivation film disposed on said substrate so as to cover said layered structure; (c) a second passivation film formed as a layer overlying said drain wiring and said first passivation film; (d) source/drain openings passing through said first passivation film and said second passivation film to reach said amorphous silicon semiconductor layer; (e) an opening passing through said second passivation film to reach said drain wiring; and (f) a wiring layer formed by a pixel electrode film disposed on said second passivation film, said wiring layer extending through said opening and openings for connection.

94.    At a minimum, Defendant has known of the '093 patent at least as early as the filing date of the complaint. In addition, Defendant has known of the '093 patent since December 17, 2019 when Defendant was provided access to a data room containing claim charts, including for the '093 patent.

95.    Upon information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '093 patent to directly infringe one or more claims of the '093 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '093 patent. Upon information and belief,

Defendant intends to cause, and has taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, TomTom GPS products that incorporate Hannstar TFT-LCD panels are designed for and sold to consumers in the United States. *See TomTom Rider 400*, TOMTOM, https://www.tomtom.com/en_us/drive/motorcycle/products/rider-400/ (indicating that the "Map Coverage" for the device includes the "United States").

96.    Upon information and belief, despite having knowledge of the '093 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '093 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '093 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

97.    VPV has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to VPV in an amount that adequately compensates VPV for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V

### (INFRINGEMENT OF U.S. PATENT NO. 6,891,196)

98.      Plaintiff incorporates paragraphs 1 through 97 herein by reference.

99.      VPV is the assignee of the '196 patent, entitled "Active matrix substrate and manufacturing method therefor," with ownership of all substantial rights in the '196 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

100.     The '196 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '196 patent issued from U.S. Patent Application No. 10/617,035.

101.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement) one or more  claims of the '196 patent in this judicial district and elsewhere in Texas and the United States.

102.     Upon information and belief, Defendant designs, manufactures, imports, distributes, offers to sell, and sells the Accused Panels, including via Defendant's subsidiaries, partners, and customers. These panels are incorporated into electronic devices such as GPS devices, bridges, and satellite radios, including such devices distributed and sold in the U.S. under at least the TomTom and SiriusXM brands.

103.     Defendant directly infringes the '196 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '196 patent to, for example, alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendant sells and makes Accused Panels

outside of the United States, delivers those products to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendant delivers the Accused Panels outside of the United States, Defendant does so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '196 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendant directly infringes the '196 patent through its direct involvement in the activities of Defendant's subsidiaries, partners, and customers on behalf of and for the benefit of Defendant. Such direct infringement includes selling and offering for sale the Accused Panels directly to its U.S. customers, such as TomTom and SiriusXM and importing the Accused Panels into the United States for its customers. Upon information and belief, Defendant's U.S. based subsidiaries conduct activities that constitute direct infringement of the '196 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendant is vicariously liable for this infringing conduct of Defendant's U.S. based subsidiaries and its selling agents (under both the alter ego and agency theories) because, as an example and, upon information and belief, Defendant and its U.S. based subsidiaries and selling agents operate as agents of one another and vicariously as arms of the same business group to work in concert together, including as business partners or in a joint venture, entering into agreements that are nearer than arm's length to conduct business in the United States. Defendant further receives a direct financial benefit from its U.S. based subsidiaries' infringement.

104.    For example, Defendant infringes claim 1 of the '196 patent via the Accused Panels such as Hannstar A4HSN55003093 (incorporated into the TomTom Rider 400), Hannstar HSD070IFW1 (incorporated into the TomTom Bridge), and Hannstar ET0240C3DM6

(incorporated into SiriusXM Onyx Plus SXPL2). Those Accused Panels includes a "lateral electrical field type active matrix substrate comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include (a) a gate electrode layer, a gate insulating layer and an amorphous silicon semiconductor layer deposited in a substantially stacked fashion on a transparent insulating substrate, viewed from a direction normal to said transparent insulating substrate, to form a layered structure, including a gate electrode, a gate wiring, a comb-shaped common electrode and a thin-film transistor area; (b) a drain wiring formed on a first passivation film disposed on said substrate so as to cover said layered structure; and (c) a second passivation film formed as a layer overlying said drain wiring and said first passivation film; (d) source/drain openings passing through said first passivation film and said second passivation film to reach said amorphous silicon semiconductor layer, and (e) an opening passing through said second passivation film to reach said drain wiring; wherein (f) a wiring layer extending through said drain opening to said drain wiring and a pixel electrode connected to said source opening are formed by a pixel electrode film disposed on said second passivation film.

105.    Defendant further infringes the '196 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '196 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

106.    At a minimum, Defendant has known of the '196 patent at least as early as the filing date of the complaint. In addition, Defendant has known of the '196 patent since December 17, 2019 when Defendant was provided access to a data room containing claim charts, including for the '196 patent.

107.    Upon information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '196 patent to directly infringe one or more claims of the '196 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '196 patent. Upon information and belief, Defendant intends to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, TomTom GPS products that incorporate Hannstar TFT-LCD panels are designed for and sold to consumers in the United States. *See* *TomTom* *Rider* *400*, TOMTOM,

https://www.tomtom.com/en_us/drive/motorcycle/products/rider-400/ (indicating that the "Map Coverage" for the device includes the "United States").

108.  Upon information and belief, despite having knowledge of the '196 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '196 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '196 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

109.  VPV has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to VPV in an amount that adequately compensates VPV for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **COUNT VI**

### (INFRINGEMENT OF U.S. PATENT NO. 7,499,119)

110.  Plaintiff incorporates paragraphs 1 through 109 herein by reference.

111.  VPV is the assignee of the '119 patent, entitled "Liquid crystal display device with thin-film transistors and method of fabricating the same," with ownership of all substantial rights in the '119 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

112.    The '119 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '119 patent issued from U.S. Patent Application No. 11/582,315.

113.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '119 patent in this judicial district and elsewhere in Texas and the United States.

114.    Upon information and belief, Defendant designs, manufactures, imports, distributes, offers to sell, and sells the Accused Panels, including via Defendant's subsidiaries, partners, and customers. These panels are incorporated into electronic devices such as GPS devices, bridges, and satellite radios, including such devices distributed and sold in the U.S. under at least the TomTom and SiriusXM brands.

115.    Defendant directly infringes the '119 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '119 patent to, for example, alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendant sells and makes Accused Panels outside of the United States, delivers those products to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendant delivers the Accused Panels outside of the United States, Defendant does so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '119 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendant directly infringes the '119 patent through its direct

involvement in the activities of Defendant's subsidiaries, partners, and customers on behalf of and for the benefit of Defendant. Such direct infringement includes selling and offering for sale the Accused Panels directly to its U.S. customers, such as TomTom and SiriusXM and importing the Accused Panels into the United States for its customers. Upon information and belief, Defendant's U.S. based subsidiaries conduct activities that constitute direct infringement of the '119 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendant is vicariously liable for this infringing conduct of Defendant's U.S. based subsidiaries and its selling agents (under both the alter ego and agency theories) because, as an example and, upon information and belief, Defendant and its U.S. based subsidiaries and selling agents operate as agents of one another and vicariously as arms of the same business group to work in concert together, including as business partners or in a joint venture, entering into agreements that are nearer than arm's length to conduct business in the United States. Defendant further receives a direct financial benefit from its U.S. based subsidiaries' infringement.

116.    For example, Defendant infringes claim 1 of the '119 patent via the Accused Panels such as Hannstar A4HSN55003093 (incorporated into the TomTom Rider 400), Hannstar HSD070IFW1 (incorporated into the TomTom Bridge), and Hannstar ET0240C3DM6 (incorporated into SiriusXM Onyx Plus SXPL2). That Accused Panel includes a "liquid-crystal display device comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panel includes a first interconnection line comprising a patterned Al or Al alloy layer, disposed directly on an insulating plate or over the plate by way of an underlying insulating layer: a first insulating layer formed on the plate to cover the first interconnection line, the first insulating layer having a contact hole that exposes a part of

the first interconnection line; a first conductive material made of a plated metal, the first conductive material being in contact with the exposed part of the first interconnection line in the contact hole in such a way as to cover the whole exposed part thereof; and a first transparent conductive layer in contact with the first conductive material; wherein the first transparent conductive layer is electrically connected to the first interconnection line by way of the first conductive material.

117.    Defendant further infringes the '119 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '119 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

118.    At a minimum, Defendant has known of the '119 patent at least as early as the filing date of the complaint. In addition, Defendant has known of the '119 patent since December 17, 2019 when Defendant was provided access to a data room containing claim charts, including for the '119 patent.

119.    Upon information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '119 patent to directly infringe one or more claims of the '119 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '119 patent. Upon information and belief,

Defendant intends to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, TomTom GPS products that incorporate Hannstar TFT-LCD panels are designed for and sold to consumers in the United States. *See* *TomTom* *Rider* *400*, TOMTOM, https://www.tomtom.com/en_us/drive/motorcycle/products/rider-400/ (indicating that the "Map Coverage" for the device includes the "United States").

120.    Upon information and belief, despite having knowledge of the '119 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '119 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '119 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

121.    VPV has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to VPV in an amount that adequately compensates VPV for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together

with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

122.   Plaintiff VPV is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

123.   Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

124.   Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

125.   Plaintiff VPV respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

1.   A judgment that Defendant has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.   A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendant;

3.   A judgment and order requiring Defendant to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4.  A judgment and order requiring Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5.  A judgment and order finding this to be an exceptional case and requiring Defendant to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6.  Such other and further relief as the Court deems just and equitable.


Dated: August 5, 2020                    Respectfully submitted,

                                         /s/Patrick J. Conroy
                                         Patrick J. Conroy
                                         Texas Bar No. 24012448
                                         T. William Kennedy Jr.
                                         Texas Bar No. 24055771
                                         Terry A. Saad
                                         Texas Bar No. 24066015

                                         **Bragalone Conroy PC**
                                         2200 Ross Avenue
                                         Suite 4500W
                                         Dallas, TX 75201
                                         Tel: (214) 785-6670
                                         Fax: (214) 785-6680
                                         pconroy@bcpc-law.com
                                         bkennedy@bcpc-law.com
                                         tsaad@bcpc-law.com